IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. CCB-07-383 |
| | * | |
| ANTIONE BOYCE | * | |

*******

## MEMORANDUM

Antione Boyce is a forty-two-year-old federal prisoner who is serving a 210-month sentence for several offenses arising out of his participation in a conspiracy to rob a drug trafficker. Boyce has served 160 months, over seventy-five percent of his sentence. Now pending is Boyce's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (the "compassionate release" statute), based on underlying health conditions that make him particularly susceptible to serious illness related to COVID-19. (ECFs 366, 378).[1] The government opposes the motion. (ECF 383). For the reasons explained below, the motion will be granted and Boyce's sentence will be reduced to time served, followed by a four-year term of supervised release of which Boyce will serve twelve months on home confinement.

## BACKGROUND

In 2007 Boyce, along with Rahsean Holmes and other co-defendants, was charged with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); possession with intent

---

[1] Counsel was appointed to represent Boyce in connection with his motion for compassionate release on August 21, 2020. (ECF 368). Boyce subsequently filed a motion to appoint counsel on December 1, 2020, alleging that his appointed counsel was not willing to supplement Boyce's motion. (ECF 375). On December 24, 2020, counsel supplemented the motion. (ECF 378). The motion to appoint counsel will be denied as moot.

1

to distribute narcotics, in violation of 21 U.S.C. § 841; conspiracy to distribute narcotics, in violation of 18 U.S.C. § 846; violation of the felon in possession of a firearm statute (18 U.S.C. § 922(g)(1)); and possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). (ECF 41, Superseding Indictment). Boyce went to trial on these charges in May 2008 and was convicted on all counts except for a single possession with intent to distribute count. (ECF 124, Jury Verdict). The evidence at trial showed that Boyce was a drug supplier of Holmes and that he was recruited by Holmes to assist in the planning and commission of home invasion robberies. Working with a cooperating witness, investigators led Holmes to believe he had an opportunity to rob a fellow drug dealer at a Quality Inn Hotel where the dealer was purportedly storing multiple kilograms of cocaine. The dealer did not exist, but the story was devised to arrest Holmes and others in a safe manner, without endangering others. Holmes indicated a willingness to kidnap and kill the would-be victim in order to obtain the drugs and any drug proceeds. On August 15, 2007, Holmes, along with Boyce and another co-defendant, arrived at the hotel in a vehicle for the purpose of carrying out the robbery. At that time, members of the Baltimore police SWAT team approached Holmes's vehicle, and Holmes fled in the vehicle. A high-speed chase ensued, during which Boyce bailed out of Holmes's vehicle and fled through a neighborhood in South Baltimore. Boyce was observed running from the scene of the chase and hiding near a children's playhouse in the neighborhood. Two loaded firearms were later recovered from the interior of the playhouse. Officers also recovered from Holmes's vehicle other evidence of a planned robbery, including zip ties. (ECF 380-1, Sentencing Tr. at 14–20).

At sentencing, Boyce was subject to an enhanced sentence under 21 U.S.C. § 851, which meant that he was subject to a ten-year mandatory minimum sentence on the conspiracy to distribute narcotics count in addition to the consecutive-five-year mandatory minimum sentence he faced for his possession of a firearm during a crime of violence. (*Id.* at 10). After considering the sentencing

factors under 18 U.S.C. § 3553(a), the court sentenced Boyce to a total of 210 months in custody. (*Id.* at 46).

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. Before the First Step Act was enacted, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id.* But under the amended statute, a court may conduct such a review also "upon motion of the defendant," if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.* The court may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant it. *See* 18 U.S.C. § 3582(c)(1)(A)(i).[2]

On May 19, 2020, Boyce filed an administrative request for compassionate release to the warden of FCI Florence, where he is currently incarcerated. (*See* ECF 366-1). That request was denied

---

[2] Under 28 U.S.C. § 994(t), the United States Sentencing Commission has the responsibility to define "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). The most recent Sentencing Commission policy statement defining "extraordinary and compelling reasons" for sentence reduction, Guideline § 1B1.13, predates the First Step Act and, as the Fourth Circuit recently held, is not a policy statement that applies to motions for compassionate release brought by defendants, because its plain text "constrains the entire policy statement to motions filed solely by the BOP, . . . and not by defendants themselves." *United States v. McCoy*, 981 F.3d 271, 281–82 (4th Cir. 2020) (internal quotation marks and citation omitted). In the absence of an "applicable policy statement[] issued by the Sentencing Commission" concerning what may be an "extraordinary and compelling reason" for compassionate release when a defendant brings a motion under § 3582(c)(1)(A), "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

in September 2020. (*See* ECF 380 at 3). The government does not contest that Boyce's motion is properly before the court or that there are "extraordinary and compelling reasons" to reduce Boyce's sentence.

Boyce has hypertension (i.e., high blood pressure) and a BMI of 32.5, meaning he is obese. (ECF 380-2 at 2; ECF 382-1 at 16). The CDC has warned that individuals with obesity "are at increased risk of severe illness" from COVID-19, that individuals with hypertension "might be at an increased risk for severe illness" from COVID-19, and that "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Feb. 3, 2020). Further compounding the risk to Boyce is the mere fact of his incarceration, *see, e.g.*, *Coreas v. Bounds*, 451 F. Supp. 3d 407, 413 (D. Md. 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."). The court thus agrees with the parties that Boyce's risk of severe illness from COVID-19 is an "extraordinary and compelling reason" to consider him for a reduction in sentence. Thus, the only issue is whether the § 3553(a) factors weigh in favor of a sentence reduction.

## DISCUSSION

The government opposes Boyce's release under the § 3553(a) factors on the basis that the seriousness of his offense, his criminal history, and his disciplinary record at the BOP show that continued incarceration is necessary to protect the public from further crimes by Boyce.

Boyce's offense was certainly serious and shows he was prepared to engage in violence. Though the evidence at trial showed that his co-defendant, Holmes, was the primary orchestrator of the scheme to rob a person they believed to be a drug trafficker, the evidence strongly suggested that Boyce supplied firearms and other tools for the robbery, and two handguns were recovered near

the location where he jumped out of Holmes's car. (ECF 380-1, Sentencing Tr. at 16–17). This conduct was dangerous and warranted a serious sentence.

As for his criminal history, between the ages of 18 and 21, Boyce accrued four Maryland state convictions, three for the possession of a controlled dangerous substance and one for second-degree assault. (ECF 391, Presentence Report ¶¶ 45–49). Without minimizing Boyce's prior criminal conduct, the court notes (as does the government) that all these convictions are now at least twenty years old and occurred early in Boyce's young adulthood. The court considers Boyce's criminal history alongside Boyce's post-sentencing conduct, which "provides the most up-to-date-picture of [his] 'history and characteristics.'" *See Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)).

Boyce's first five years of incarceration were marked by a number of disciplinary infractions, the most serious of which involved a finding that Boyce participated in a plan to introduce drugs into FCI Cumberland, where he was incarcerated at the time. (ECF 382-3). This history is concerning, but the court notes that none of these infractions involve violence and that in the past eight years Boyce has incurred only one infraction. During his incarceration, Boyce has earned his GED and has taken thirty courses. (ECF 380-3). He also appears to have maintained significant family support—counsel for Boyce asserts that Boyce's mother, step-father, and sisters are willing to assist him upon his release and Boyce has a release plan to live with one of his sisters in Baltimore. (ECF 380 at 15–16). Taken as a whole, the court does not believe that Boyce's post-sentencing conduct reveals Boyce as likely to reoffend or presents an inability on his part to comply with supervision. Boyce has now served thirteen years in prison, by far his lengthiest prison term after serving largely suspended sentences for his prior state convictions. He has served the vast majority of his sentence—he is eligible for release in approximately two years and for home detention in eighteen months (ECF 382-4). After reviewing his history, the court is persuaded that

accelerating Boyce's release by two years poses a minimal risk to the community, and the time he has already served is sufficient to provide just punishment for the offense and to deter further criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(A)–(C).

The court also takes into consideration the parties' agreement that if Boyce were sentenced today, he would face a lower guideline range and a lower mandatory minimum sentence. *See id.* § 3553(a)(3)–(4). Today, the sentencing enhancement under 21 U.S.C. § 851 would not apply to Boyce, because none of his prior convictions resulted in a sentence of more than twelve months, *see* 21 U.S.C. § 802(57); 21 U.S.C. § 841(b)(1)(B), and his mandatory sentence would thus be ten years, not fifteen. (ECF 380 at 13–14). And, because of the current Sentencing Guidelines' treatment of the drug quantity involved in Boyce's conspiracy (500 grams of cocaine), today his applicable guideline range would be 123 to 138 months. (ECF 380 at 14–15). The court finds, for the reasons articulated above, that a reduction in sentence is warranted even under the former guidelines and the § 851 enhancement, but it also considers this "changed landscape when considering the goals of sentencing." *United States v. Lee*, No. DKC 12-0493, 2020 WL 4053352, *4 (D. Md. Jul. 20, 2020); *see also United States v. Kess*, No. ELH-14-480, 2020 WL 3268093, *8 (D. Md. Jun. 17, 2020).

Based on the above considerations, and in light of the principle that a sentence should be "sufficient, but not greater than necessary," *see* 18 U.S.C. § 3553(a), the court finds that the § 3553(a) factors weigh in favor of reducing Boyce's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). This, combined with the "extraordinary and compelling" risk to Boyce of severe illness from COVID-19 should he remain in prison, leads the court to conclude that Boyce is entitled to compassionate release.

## CONCLUSION

For the foregoing reasons, Boyce's motion for compassionate release (ECFs 366, 378) will be granted and his sentence will be reduced to time served. The associated motion to appoint counsel

(ECF 375) will be denied as moot. The associated motions to seal (ECFs 379, 381, 390) will be granted to protect the confidentiality of personal medical information.

The terms and conditions of supervised release to which Boyce was sentenced will remain in place, with the additional condition that Boyce will spend the first twelve months of supervised release on home confinement, to be monitored by U.S. Probation, using location monitoring technology at the discretion of the Probation Officer. For the twelve-month home confinement period, Boyce shall not leave the address approved by U.S. Probation except for activities approved in advance by U.S. Probation. In addition, he will be required to comply with all directives of federal, state, and local governments related to public health issues, including COVID-19. A separate order follows, which will be stayed for up to fourteen days to make appropriate travel arrangements and to ensure Boyce's safe release, including by placing Boyce in quarantine for a period of fourteen days and to evaluate him for the purposes of receiving a medical clearance.

2/10/21
Date

\_\_/S/_____
Catherine C. Blake
United States District Judge